Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATHEESH THOMAS, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| FIVE PRIME THERAPEUTICS, INC., WILLIAM R. RINGO, FRANKLIN M. BERGER, KAPIL DHINGRA, PEDER K. JENSEN, GARRY NICHOLSON, CAROL SCHAFER, LORI LYONS-WILLIAMS, and THOMAS CIVIK, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Satheesh Thomas ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. Plaintiff brings this action against Five Prime Therapeutics, Inc. ("Five Prime" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer Franklin Acquisition Sub, Inc. ("Purchaser") (the "Offer"), a subsidiary of Amgen Inc. ("Amgen") (the "Proposed Transaction").

2. On March 4, 2021, Five Prime announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, Amgen will acquire all outstanding shares of Five Prime for $38.00 in cash per share of Five Prime common stock. The Offer is scheduled to expire at 12:00 midnight, New York Time, on April 16, 2021 (one minute following 11:59 p.m., New York Time, on April 15, 2021).

3. On March 18, 2021, in order to convince Five Prime common stockholders to tender their shares in the Offer, defendants filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the SEC, which omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, Lazard Frères & Co. LLC ("Lazard"); and (ii) potential conflicts of interest faced by Lazard and Company insiders. The failure to adequately disclose such material information renders the 14D-9 false and misleading.

4. For these reasons, and as set forth in detail herein, Plaintiff alleges that defendants violated Sections 14(e) and 20(a) of the Exchange Act as Five Prime's stockholders need such information in order to make an informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Five Prime is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Five Prime.

9. Defendant Five Prime is a Delaware corporation with its principal executive offices located at 111 Oyster Point Boulevard, South San Francisco, California 94080. Five Prime's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "FPRX."

10. Defendant William R. Ringo has served as Chairman of the Board since January 2019, and a director of the Company since October 2014.

11. Defendant Franklin M. Berger has served as a director of the Company since September 2010.

12. Defendant Kapil Dhingra has served as a director of the Company since December 2015.

13. Defendant Peder K. Jensen has served as a director of the Company since July 2011.

14. Defendant Garry Nicholson has served as a director of the Company since May 2017.

15. Defendant Carol Schafer has served as a director of the Company since May 2019.

16. Defendant Lori Lyons-Williams has served as a director of the Company since June 2019.

17. Defendant Thomas Civik ("Civik") has served as President, Chief Executive Officer ("CEO"), and a director of the Company since April 13, 2020.

18. Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

19. Relevant non-party Amgen is a Delaware corporation with its principal executive offices located at One Amgen Center Drive, Thousand Oaks, California 91320. A biotechnology pioneer, Amgen has grown to be one of the world's leading independent biotechnology companies, has reached millions of patients around the world with a presence in approximately 100 countries worldwide, and is developing a pipeline of medicines with breakaway potential. Amgen's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "AMGN."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

20. Five Prime is a clinical-stage biotechnology company focused on developing immune modulators and precision therapies to improve the lives of patients with solid tumor cancers. Five Prime's primary focus is on developing immuno-oncology and targeted cancer therapies. Each of the Company's product candidates has an innovative mechanism of action and addresses patient populations for which better therapies are needed. In addition, Five Prime uses companion

- 4 -

diagnostics where appropriate to allow it to select patients most likely to benefit from treatment with the Company's product candidates. The most advanced product candidates that Five Prime or its partners are developing are (1) bemarituzumab (FPA144), an antibody that inhibits fibroblast growth factor receptor 2b ("FGFR2b"), and that induces antibody-dependent cellular cytotoxicity, (2) FPT155, a soluble CD80 fusion protein that enhances co-stimulation of T cells through CD28, (3) FPA157, an anti-CCR8 antibody that is engineered to deplete CCR8-expressing intratumoral regulatory CD4+ T cells, and (4) BMS-986258, an anti-T cell immunoglobulin and mucin domain-3, ("TIM-3"), antibody that Five Prime's partner, Bristol-Myers Squibb Company is studying in a clinical trial in combination with Opdivo (nivolumab) in patients with advanced malignant tumors.

21. On November 3, 2020, the Company announced its third quarter 2020 financial results. Net loss for the third quarter of 2020 was $26.4 million, or $0.74 per basic and diluted share, compared to a net loss of $36.1 million, or $1.03 per basic and diluted share, for the third quarter of 2019. Five Prime also raised guidance to end 2020 with cash, cash equivalents and marketable securities between $100 and $105 million. Defendant Civik commented on the results, stating:

> We look forward to achieving three milestones before the end of the year that will inform future development of our pipeline. Before year end, we expect to report top-line data from the FIGHT Phase 2 trial in front-line gastric cancer. We also expect to have enough FPT155 monotherapy data to inform next steps for the program, and we will present the first data set from our anti-CCR8 program at the upcoming SITC annual meeting. The Five Prime team has done an excellent job advancing our clinical and research programs despite the many challenges we have all confronted this year.

22. On March 4, 2021, Five Prime and Amgen issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> THOUSAND OAKS, Calif. & SOUTH SAN FRANCISCO, Calif.--Mar. 4, 2021-- Amgen (NASDAQ: AMGN) and Five Prime Therapeutics (NASDAQ: FPRX), a clinical-stage biotechnology company focused on developing immuno-oncology and targeted cancer therapies, today announced an agreement under which Amgen will acquire Five Prime Therapeutics for $38.00 per share in cash, representing an equity value of approximately $1.9 billion. This acquisition adds Five Prime's innovative pipeline to Amgen's leading oncology portfolio.

- Five Prime's lead asset, bemarituzumab, is a first-in-class, Phase 3 ready anti-FGFR2b antibody with positive data from a randomized, placebo-controlled Phase 2 study in frontline advanced gastric or gastroesophageal junction (GEJ) cancer. Bemarituzumab targets FGFR2b, which has been found to be overexpressed in approximately 30% of patients with non-HER2 positive gastric cancer, as well as other solid tumors.

- The bemarituzumab Phase 2 FIGHT trial demonstrated clinically meaningful improvements in progression-free survival (PFS), overall survival (OS) and overall response rate (ORR) in the frontline treatment of patients with advanced gastric or GEJ cancer. Additional analysis showed a positive correlation between efficacy and expression of FGFR2b on tumor cells, confirming both the importance of the FGFR2b target and the activity of bemarituzumab against this target.

- This correlation suggests that FGFR2b could play a role in other epithelial cancers, including lung, breast, ovarian and other cancers.

- The acquisition of Five Prime also supports Amgen's international expansion strategy. Gastric cancer is one of the world's most common forms of cancer and is particularly prevalent in the Asia-Pacific region, where Amgen expects to generate significant volume growth in the coming years. Amgen plans to leverage its presence in Japan and other Asia-Pacific markets to maximize bemarituzumab's potential. In addition, as part of this transaction, Amgen will receive a royalty percentage on future net sales in Greater China ranging from the high teens to the low twenties from a pre-existing co-development and commercialization agreement between Five Prime and Zai Lab (Shanghai) Co., Ltd.

- Five Prime's additional innovative pipeline programs complement Amgen's efforts to bring meaningful therapies to oncology patients.

"The acquisition of Five Prime offers a compelling opportunity for Amgen to strengthen our oncology portfolio with a promising late-stage, first-in-class global asset to treat gastric cancer," said Robert A. Bradway, chairman and chief executive officer at Amgen. "We look forward to welcoming the Five Prime team to Amgen and working with them to leverage our best-in-class monoclonal antibody manufacturing capabilities to supply additional clinical materials, as well as expanded production quantities, to realize the full potential of bemarituzumab for even more patients around the world as quickly as possible."

"This is an exciting day for patients who may one day benefit from the promise of bemarituzumab and our full pipeline. I'm so proud of the Five Prime team and the science we've pioneered," said Tom Civik, president and chief executive officer of Five Prime. "We see tremendous complementarity between the two companies. Amgen has global reach, world-class resources, and they share our deep passion for science and commitment to patients. I have full confidence that Amgen is the right

# (continued)

company to work with us to bring our innovative cancer treatments to patients and to achieve our mission to rewrite cancer."

**Transaction Terms**

Under the terms of the merger agreement, which was approved by the Boards of Directors of both companies, Amgen will commence a tender offer to acquire all of the outstanding shares of Five Prime's common stock for $38.00 per share in cash. Following the completion of the tender offer, a wholly-owned subsidiary of Amgen will merge with Five Prime and shares of Five Prime that have not been tendered and purchased in the tender offer will be converted into the right to receive the same price per share in cash as paid in the tender offer (other than shares held by stockholders who properly demand and perfect appraisal rights under Delaware law).

The transaction is expected to close by the end of the second quarter and is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Five Prime's common stock and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

Amgen reaffirmed its full-year outlook with Revenue guidance of $25.8 to $26.6 billion and non-GAAP EPS guidance of $16.00-$17.00.

## The 14D-9 Contains Material Misstatements or Omissions

28.     On March 18, 2021, defendants filed the materially misleading and incomplete 14D-9 with the SEC. Designed to convince the Company's stockholders to tender their shares in the Offer, the 14D-9 is rendered misleading by the omission of critical information concerning: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, Lazard; and (ii) potential conflicts of interest faced by Lazard and Company insiders.

***Material Omissions Concerning the Company's Financial Projections and Lazard's Financial Analyses***

29.     The 14D-9 omits material information regarding the Company's financial projections.

30.     For example, the 14D-9 fails to disclose the preliminary forecasts for the Company prepared by Company management and reviewed at a January 30, 2021 Board meeting. *See* 14D-9 at 16.

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

31. The 14D-9 also fails to disclose all line items underlying the calculation of EBIT and unlevered free cash flow, including, (a) income taxes, (b) projected impact of net operating losses, (c) depreciation and amortization, (d) changes in net working capital, and (e) capital expenditures.

32. Moreover, the 14D-9 fails to disclose a quantification of the assumptions underlying total revenue, including, net product sales, partnership payments, upfront payment, development and commercial milestones and royalties for the Company's partnered assets.

33. The 14D-9 also omits material information regarding Lazard's financial analyses.

34. The 14D-9 describes Lazard's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Five Prime's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

35. With respect to Lazard's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (ii) Five Prime's terminal value; and (iii) Five Prime's estimated net cash as of December 31, 2020.

36. With respect to Lazard's *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis*, the 14D-9 fails to disclose the individual multiples and financial metrics for each of the companies and transactions Lazard analyzed, respectively.

37. With respect to Lazard's *Premia Paid Analysis*, the 14D-9 fails to disclose: (i) the transactions observed; and (ii) the individual premia for each of the transactions.

38. With respect to Lazard's *Research Analyst Price Targets* analysis, the 14D-9 fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

39.     Without such undisclosed information, Five Prime stockholders cannot evaluate for themselves whether the financial analyses performed by Lazard were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Lazard's opinion and analyses should factor into their decision whether to tender their shares in favor of or against the Proposed Transaction or seek appraisal.

40.     The omission of this material information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following sections of the 14D-9: "Projected Financial Information" and "Opinion of Five Prime's Financial Advisor."

***Material Omissions Concerning Lazard's and Company Insiders' Potential Conflicts of Interest***

41.     The 14D-9 fails to disclose material information concerning the potential conflicts of interest faced by Lazard.

42.     The 14D-9 sets forth that "Lazard has in the past two years provided certain investment banking services to Five Prime." *Id*. at 34.  Yet, the 14D-9 fails to disclose the details of the services Lazard provided to Five Prime and the amount of compensation Lazard has received for these services.

43.     The 14D-9 also fails to disclose whether Lazard has performed any services for Amgen or its affiliates in the two years preceding the date of its fairness opinion and, if so, details of the services provided and compensation received in connection with such services.

44.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45. Additionally, the 14D-9 fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

46. For example, the 14D-9 fails to disclose whether any of Five Prime's executive officers or directors have secured employment with Amgen as well as the details of any retention-related discussions and negotiations that occurred between Amgen and Five Prime executive officers, including who participated in all such communications, when they occurred and their content. The 14D-9 further fails to disclose whether any of Amgen's proposals or indications of interest mentioned management retention or participation in the combined company.

47. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Five Prime's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48. The omission of this material information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following sections of the 14D-9: "Opinion of Five Prime's Financial Advisor," "Arrangements between Five Prime and the Current Executive Officers, Directors and Affiliates of Five Prime," and "Background of the Offer and the Merger."

49. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations  
of Section 14(e) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. Defendants violated Section 14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

52. Defendants knew that Plaintiff would rely upon their statements in the 14D-9 in determining whether to tender his shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

53. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

### COUNT II

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

54. Plaintiff repeats all previous allegations as if set forth in full.

55. The Individual Defendants acted as controlling persons of Five Prime within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Five Prime and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

58.     In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The 14D-9 purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

59.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Five Prime, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

C.  Directing the Individual Defendants to disseminate a 14D-9 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 6, 2021

**WEISSLAW LLP**

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
         -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

**OF COUNSEL**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*